BRUCE TROTTER, as the Highway Commissioner of the Goose Lake Township Road District, Grundy County, Illinois, Plaintiff-Appellee, v. LINDA SPEZIO, Independent Ex'r of the Estate of Jayne R. Thompson, Deceased, *et al.*, Defendants (David Phillips *et al.*, Defendants-Appellants).

Third District   No. 3—03—0747

Opinion filed June 23, 2004.

Eric B. Deobler (argued), of White, Marsh, Anderson, Vickers & Deobler, of Ottawa, for appellants.

Joshua S. Whitt and Stuart L. Whitt (argued), both of Whitt Law, of Aurora, for appellee.

JUSTICE SCHMIDT delivered the opinion of the court:

This appeal involves issues and circumstances surrounding a local authority's attempt to exercise its eminent domain power. The plaintiff, Bruce Trotter (commissioner), acting in his capacity as the highway commissioner of the Goose Lake Township Road District, filed a complaint for condemnation of 2.541 acres located in Grundy County. The defendants are landowners having an interest in that parcel of land. Defendants filed a traverse and motion to dismiss the complaint. The circuit court of Grundy County denied the landowners' motion and, after a bench trial, entered judgment awarding the landowners $8,200 for full compensation of the parcel. Only landowners Phillips, Holderman and Johnson appeal.

## BACKGROUND

White Tie Road runs through Goose Lake Township in Grundy County, Illinois. This road is essentially an east-west road that has a bow to the north creating an "S" curve at the section which is the subject of this litigation. Claypool Ditch runs along the south side of the road near the section that contains the curve.

In accordance with section 6—303 of the Illinois Highway Code (the Code) (605 ILCS 5/6—303 (West 2002)), a petition was filed with the highway commissioner seeking to "modify, alter and improve White Tie Road." Modifying White Tie Road in the manner requested by the petitioners would also necessitate the altering of Claypool Ditch to prevent White Tie Road from flooding.

Pursuant to section 6—305 of the Code (605 ILCS 5/6—305 (West 2002)), a public meeting was held on the petition. After taking evidence, a "final decision" was entered by the highway commissioner. The commissioner made the following findings in this final decision:

"1. White Tie Road, in its present configuration, poses a threat to the safety of motorists and their property. In order to eliminate that threat, it is in the best interest of the public and in the economic interest of the District to improve White Tie Road as prayed for in the Petition and as depicted on Exhibit A to the Petition.

2. The Claypool Drainage Ditch, in its present configuration, poses a threat to the safety of motorists and their property. In order to eliminate that threat, it is in the best interest of the public

and the economic interests of the District to construct an overflow channel for the Claypool Drainage Ditch as prayed for in the Petition and as depicted on Exhibit A to the Petition.

   3. The aforesaid improvements will require the acquisition of the property described in the Petition and it is in the best interest of the public and economic interest of the District to do so.

   4. After the aforesaid improvements are made, any person residing or owning land within 2 miles of that portion of White Tie Road proposed to be altered, modified and improved, will still have reasonable access thereto by way of motor vehicle and other portable farm machinery commonly used in the area and to community and trade centers."

The landowners offered no evidence below contesting the validity of the commissioner's findings.

   The commissioner then granted the petition and announced "that the property described in the Petition be acquired in conformance with the authority set forth in 605 ILCS 5/6—303, *et seq.*" Five weeks later, the commissioner adopted a "resolution" providing for the acquisition of the 2.541 acres of land. The resolution stated that the commissioner could not agree with the landowners as to an amount of just compensation and that he determined it was necessary to file a condemnation action.

   The commissioner filed a condemnation suit approximately one month following the adoption of the resolution. The condemnation complaint attached and incorporated by reference the original petition, commissioner's final decision and resolution. The landowners filed a traverse and motion to dismiss, which was denied. A judgment order was entered following a bench trial fixing the landowners' compensation for the 2.541 acres of land. The landowners appeal only the denial of their traverse and motion to dismiss.

## ISSUE ON APPEAL

The landowners claim that the petition, final decision, resolution and complaint in this matter are faulty for failing to notify them that the condemnation authority being utilized by the highway commissioner was, in part, that found in section 6—802 of the Code. 605 ILCS 5/6—802 (West 2002). The gravamen of the landowners' argument is that the highway commissioner was mandated to cite every statute granting him authority to take any part of the parcel at issue in the condemnation complaint. The failure to do so formed the basis for the landowners' traverse and motion to dismiss, the denial of which they claim is error.

   The landowners begin their argument by noting that section 7—102 of the Eminent Domain Act (735 ILCS 5/7—102 (West 2002))

states that a condemning authority "may apply to the circuit court of the county where the property or any part thereof is situated, by filing with the clerk a complaint, setting forth, by reference, his, her or their authority in the premises, the purpose for which the property is sought to be taken or damaged, a description of the property, the names of all persons interested therein as owners or otherwise as appearing of record, if known, or if not known stating that fact and praying such court to cause the compensation to be paid to the owner to be assessed." 735 ILCS 5/7—102 (West 2002).

The landowners claim the phrase "setting forth, by reference, his, her or their authority" within section 7—102 mandates that the condemnation complaint set forth every statutory authority through which the commissioner seeks to take any part of the parcel of land. The landowners allege that their petition is supported by *City of Mound City v. Mason*, 262 Ill. 392, 104 N.E.2d 685 (1914), and *Goldman v. Moore*, 35 Ill. 2d 450, 220 N.E.2d 466 (1966). We disagree.

## ANALYSIS

In *Goldman v. Moore*, our supreme court held that the petition filed by the condemning authority was invalid because no formal resolution concerning the acquisition of the land in question had been adopted at the time the petition was filed in the circuit court. The *Goldman* opinion predominately addresses the requirement of formal action by the condemnor in determining the necessity for the taking. Because the condemning authority in *Goldman* made no formal resolution prior to filing its petition, the court stated that "no record existed by which any property owner or interested citizen could determine the position of the board with respect to the acquisition of the property in question." *Goldman*, 35 Ill. 2d at 453-54. As the highway commissioner in the case *sub judice* did adopt a resolution on August 8, 2002, more than one month prior to the complaint being filed, we fail to see how *Goldman* supports defendants' contention. The final decision and resolution adopted by the commissioner clearly set forth the land to be taken, necessity for the taking and position of the commissioner with respect to the acquisition. Moreover, an adequate record existed to inform the landowners of the commissioner's intention.

Furthermore, we believe the landowners' reliance on *Mound City* is misplaced. In *Mound City*, 262 Ill. 392, 104 N.E.2d 685, a judgment assessing compensation in favor of the landowner was entered following a jury trial. Mound City's condemnation complaint stated "that the petitioner is authorized to construct, maintain and improve its levees or protective embankments for the purpose of preventing inundations and overflows, and is also authorized and empowered to

acquire real estate, by purchase or condemnation proceedings." *Mound City*, 262 Ill. at 394. While the supreme court notes that the condemnation complaint did "not refer expressly to any statute" (*Mound City*, 262 Ill. at 394), the court ultimately held that "the authority of the petitioner was sufficiently set out" by reference in the complaint (*Mound City*, 262 Ill. at 397).

Ultimately, the court held Mound City's condemnation complaint was inadequate, not for failing to cite the statute under which the city was seeking to take the land, but for failing to set forth all the facts necessary to authorize the court to act. *Mound City*, 262 Ill. at 394. Mound City was attempting to condemn land for the purpose of obtaining earth to raise and strengthen a levee system. *Mound City*, 262 Ill. at 393. The statute under which it attempted to take the land allowed for cities, villages and incorporated towns subject to, in danger of, or threatened with overflow or inundation from rivers or other sources to construct, widen, raise, strengthen, improve, repair and maintain levees. *Mound City*, 262 Ill. at 394-95. The court found the condemnation complaint deficient because it contained no allegation that the plaintiff "is a city subject to, in danger of or threatened with overflow or inundation from a river." *Mound City*, 262 Ill. at 395.

The court continued that it was not necessary for Mound City to cite either an ordinance or resolution in its condemnation complaint since Mound City's power of condemnation was derived from the statute. *Mound City*, 262 Ill. at 396. As such, *Mound City* offers no support to the landowners' argument that the complaint was deficient for failing to cite section 6—802 of the Code.

When reviewing a traverse and motion to dismiss, we must determine whether the trial court's order was against the manifest weight of evidence. *City of Naperville v. Old Second National Bank of Aurora*, 327 Ill. App. 3d 734, 763 N.E.2d 951 (2002).

■ While the order appealed from briefly states that the traverse and motion to dismiss is denied, the trial court focused on two areas in open court when explaining its ruling to the parties. The trial judge noted that the landowners could produce no case law supporting their proposition that the condemnation complaint must contain a citation to every authority under which the land is sought to be taken. The judge discussed the case cited by the landowners, *Mound City*, and noted that it stands for the exact opposite proposition of law.

The trial judge also discussed the fact that the final decision of the commissioner, incorporated by reference and attached to the complaint, notes the commissioner is proceeding under "605 ILCS 5/6—303, *et seq*." The trial judge stated that he believed "the entire statute is referred by reference with the use of the phrase *et seq*. which is incorporated in the complaint."

Section 6—303 of the Code states that "roads may be widened, altered, or vacated, and new township and district roads may be laid out in the manner provided in this Division of this Code." 605 ILCS 5/6—303 (West 2002). Inherent in this authority is the ability to construct the altered road in a manner consistent with public safety. As such, it may obviously become necessary to alter ditches and other land in proximity to the newly altered road so it does not flood or wash out during the first rainstorm. The record indicates that some of the 2.541 acres sought to be taken was for just such a purpose. While the landowners had numerous opportunities to put on evidence to the contrary, they refused to do so. Any claim of surprise or prejudice resulting from the commissioner's failure to cite section 6—802 of the Code in the complaint is disingenuous.

We hold the trial court's denial of the landowners' traverse and motion to dismiss was not error. There was no surprise to the landowners regarding what land was to be taken or as to the intent of the commissioner. The record accumulated by the commissioner and his condemnation complaint does refer to the authority under which he seeks to take the 2.541 acres.

## CONCLUSION

For the forgoing reasons, the circuit court of Grundy County is affirmed.

Affirmed.

LYTTON and McDADE, JJ., concur.