(No. 32009.-

CHICAGO HOUSING AUTHORITY, Appellee, *vs.* GILBERT R. BERKSON *et al.,* Appellants.

*Opinion filed May 20, 1953.*

FRANCIS B. STINE, of Chicago, (BRENDAN Q. O'BRIEN, of counsel,) for appellants.

ROBERT A. SNOW, and WILLIAM H. POWELL, both of Chicago, for appellee.

Mr. CHIEF JUSTICE SCHAEFER delivered the opinion of the court:

This is an appeal from an order of the circuit court of Cook County, denying defendants' motion to set aside a judgment of condemnation. Jurisdiction is based upon section 12 of the Eminent Domain Act. Ill. Rev. Stat. 1951, chap. 47, par. 12; see, also, *Chaplin* v. *Commissioners of Highways,* 126 Ill. 264.

By an amended petition to condemn, filed on October 5, 1948, the Chicago Housing Authority sought to acquire certain real estate, including a lot owned by defendants, for slum clearance purposes. Defendants were served and on November 12, 1948, filed an appearance by an attorney. No pleading was filed on behalf of defendants, however, and on November 14, 1949, their attorney was granted leave to withdraw from the case. On December 19, 1949, the case was called for trial as to the lot owned by defendants, and petitioner's attorney proceeded to select a jury. The court then learned that defendants were not represented by counsel and dismissed the jury. After advising defendants of their rights and suggesting that they retain counsel, the court continued the case. After subsequent continuances, a hearing was had on January 16, 1950. The defendants were not represented by counsel. Petitioner introduced evidence as to the value of defendants' lot, and the jury fixed its value at $2700. Judgment was entered on the verdict on January 16, 1950.

On April 6, 1950, counsel who had been retained by defendants after the judgment was entered filed a motion to vacate the judgment. The motion charged that the judgment was void for lack of jurisdiction, and that certain facts existed which, if they had been made known to the trial court, would have precluded the entry of judgment. The circuit court conducted a hearing on the motion and then entered the order appealed from, denying defendants' motion to vacate the judgment of condemnation.

Defendants' principal contention is that the petitioner failed to obtain the approval of the governing body of the city of Chicago before acquiring private property for public purposes, as it was required to do, and that this failure deprived the trial court of jurisdiction to enter the condemnation judgment.

When the amended petition to condemn was filed on October 5, 1948, there was no requirement that the governing body of the city approve the proposed land acquisitions of the petitioner. On August 3, 1949, after the filing of the amended petition but before the entry of the condemnation judgment, section 9 of the Housing Authorities Act was amended and the following provision was added: "If the area of operation of a housing authority includes a city, village or incorporated town having a population in excess of 500,000 as determined by the last preceding Federal census, no real property or interest in real property shall be acquired in such municipality by the housing authority until such time as the housing authority has advised the governing body of such municipality of the description of the real property, or interest therein, proposed to be acquired, and the governing body of the municipality has approved the acquisition thereof by the housing authority." Ill. Rev. Stat. 1951, chap. 67½, par. 9.

Defendants maintain that this amendment to section 9, requiring approval by the city of Chicago of property acquisitions by petitioner, applies to condemnation proceedings instituted before but completed after the effective date of the amendment, and that the city's consent is a jurisdictional condition precedent to a condemnation award. Assuming, without deciding, that the amendment applied to pending condemnation proceedings, defendants are still not in a position to complain, because the objection was waived by failure to raise it at the appropriate time. The objection goes only to the right of the condemnor to acquire property by eminent domain. It does not affect the general jurisdic-

tion of the court over the subject matter of an eminent domain action. It is settled that if a property owner wishes to contest the right of a condemnor to acquire his property by eminent domain, he is required to raise that issue before a jury is empaneled to determine the award. (*City of Chicago* v. *Chicago Title and Trust Co.* 331 Ill. 322; *Lieberman* v. *Chicago and South Side Rapid Transit Railroad Co.* 141 Ill. 140.) In the present case, the objection to the right of petitioner to take the property, first asserted long after the judgment was entered, came too late. It is unnecessary, therefore, to spell out the facts in the record which, in our opinion, clearly show that the city had consented to the taking of the property here involved before the amended petition to condemn was filed.

Defendants also argue that at the time the judgment was entered the petitioner had abandoned its plan for the public use of defendants' lot and that this fact, known to the petitioner, but unknown to the defendants and to the trial court, would have precluded the entry of judgment if the court had been aware of it. It is also urged that petitioner's failure to disclose this alleged fact to the trial court constituted fraud which justifies the vacation of the judgment. These contentions rest upon defendants' construction of two ordinances of the city of Chicago.

The first of these ordinances, adopted January 26, 1948, recites that certain areas, one of which includes defendants' lot, are blighted and slum areas and designates these areas as an integrated project for rehabilitation or redevelopment. Concerning the use to which the property is to be put after it has been acquired, the ordinance directs the city comptroller to purchase, at a cost not less than the amount expended by petitioner for their acquisition, lands "owned or now in process of acquisition by" petitioner. The city comptroller is then directed to sell and convey back to petitioner all lands so acquired, "the consideration for such sale to be the benefit that will accrue by reason of the

accelerating of the clearance of slum and blighted areas located upon said lands."

The second ordinance was recommended to the city council of Chicago by the petitioner on November 23, 1949, and was adopted on March 2, 1950. As proposed, it authorized petitioner to acquire seven sites for the development of ten thousand units of public low-rent housing, with financial assistance from the Federal government. One of the sites recommended, the "Medill School Area," was substantially identical to one of the areas described in the prior ordinance of January 26, 1948, but excluded a small strip of land in which defendants' lot was located. As adopted on March 2, 1950, subsequent to the entry of the condemnation judgment, the ordinance approved the acquisition by petitioner of two of the suggested areas for the development of public low-rent housing projects. One of these areas was the "Medill School Area," described so as to exclude defendants' property.

We do not construe either of these ordinances as indicating an abandonment of the public use to be served by the acquisition of defendants' lot. The amended petition to condemn was based squarely upon the power vested in the petitioner to acquire blighted and slum areas for rehabilitation and redevelopment. (Ill. Rev. Stat. 1947, chap. 67½, par. 9.). Concerning the use to which the land was to be put after it had been acquired, the amended petition stated: "* * * which real estate your petitioner will clear of improvements and will sell or lease, for redevelopment, or otherwise utilize, * * *." There is no suggestion that the land is to be used for housing projects after it has been acquired. Under our decision in *Zurn* v. *City of Chicago,* 389 Ill. 114, the clearance of slums is itself a public use sufficient to sustain the exercise of the power of eminent domain, regardless of the disposition made of the property after its acquisition. Section 9 of the Housing Authorities Act provides: "The power of eminent domain

shall apply not only to improved or unimproved property which may be acquired for or as an incident to the development or operation of a project or projects, but also to: (a) any improved or unimproved property the acquisition of which is necessary or appropriate for the rehabilitation or redevelopment of any blighted or slum area." Ill. Rev. Stat. 1947, chap. 67½, par. 9.

The ordinance of January 26, 1948, recognized and approved the land acquisitions in question as part of a State-aided program of slum clearance. Its principal concern, however, was with the use to which the land was to be put after it had been acquired. It provided that the city should purchase the land acquired by the petitioner, clear it, and then convey it back to the petitioner for the development of "standard housing projects." As we read that ordinance, the transactions with which it is concerned relate only to the method of financing the acquisition of the slum or blighted area in question and to the subsequent use to be made of the property after the public purpose of its acquisition, the clearance of a slum or blighted area, has been accomplished. Neither the statute nor the ordinance conditions the petitioner's authority to acquire the slum or blighted land in question upon the use to which it is to be put after acquisition.

The ordinance of March 2, 1950, related to a Federally-aided development of public low-rent housing projects covering two sites. One of these sites is substantially identical to the area described in the ordinance of January 26, 1948, but omits a small strip of land which includes defendants' lot. Defendants' argument is that the omission of their land from this ordinance shows an abandonment of the contemplated use of their land for housing purposes. There are two answers to this argument. First, the record does not disclose any reason why the petitioner could not carry to completion the State-aided program in the strip of land including defendants' property which was omitted from the

Federally-aided development. Second, and more important, the use to which the property was to be put after its acquisition did not affect the authority of the petitioner to acquire it for the clearance of a slum or blighted area.

It follows that the circuit court of Cook County properly denied and dismissed defendants' motion to set aside the judgment of condemnation entered on January 16, 1950.

*Order affirmed.*