THE FOREST PRESERVE DISTRICT OF DU PAGE COUNTY, Plaintiff-Appellant and Cross-Appellee, v. JACK C. MILLER *et al.*, Defendants-Appellees and Cross-Appellants.

Second District No. 2—02—0455

Opinion filed May 15, 2003.

Robert G. Black, of Law Offices of Robert G. Black, and Scott M. Day and Rachel K. Robert, both of Day & Robert, P.C., both of Naperville, for appellant.

Michael C. Wiedel and Michael G. Philipp, both of Wiedel, Hudzik, Russ & Philipp, of Downers Grove, for appellees.

JUSTICE GILLERAN JOHNSON delivered the opinion of the court:

The plaintiff, Forest Preserve District of Du Page County, appeals from the April 10, 2002, order of the circuit court of Du Page County dismissing its condemnation action. Originally, the trial court had found for the plaintiff and ordered that the condemnation of the subject parcel could proceed for $700,000. However, the trial court vacated that order and subsequently dismissed the condemnation action after finding that the plaintiff's enabling ordinance failed to reasonably describe the property to be condemned. The defendant, Jack Miller, cross-appeals from an order entered prior to the vacature and from several findings the trial court made during posttrial proceedings. We affirm.

On August 5, 1998, the plaintiff filed a complaint for condemnation, seeking to acquire a 35-acre parcel of property known as the Rodenburg Marsh, pursuant to the Downstate Forest Preserve District Act (70 ILCS 805/6 (West 1998)). The Rodenburg Marsh was owned entirely by the defendant. The plaintiff appended to its complaint Ordinance No. 98—322, which it had adopted on August 4, 1998. Forest Preserve District of Du Page County, Ordinance No. 98—322 (eff. August 4, 1998). Ordinance No. 98—322 provided that the "Executive Director, his staff and the Forest Preserve District attorneys be, and hereby are, authorized to take the necessary steps, either by negotiation or condemnation, to acquire title to the real estate described in Exhibit A and depicted in Exhibit B attached hereto." Forest Preserve District of Du Page County, Ordinance No. 98—322 (eff. August 4, 1998). Exhibit A was a metes and bounds legal description. Exhibit B was a plat map. Exhibit B, the plat map, portrayed the entire 35 acres of the Rodenburg Marsh property. However, exhibit A, the metes and bounds legal description, left out a 2.3-acre portion of the Rodenburg Marsh property.

On October 1, 1998, upon discovery of the erroneous metes and bounds legal description, the plaintiff filed an amended complaint. The

amended complaint mirrored the original complaint. Like the original complaint, attached to the amended complaint was Ordinance No. 98—322, which again provided that the "Executive Director, his staff and the Forest Preserve District attorneys be, and hereby are, authorized to take the necessary steps, either by negotiation or condemnation, to acquire title to the real estate described in Exhibit A and depicted in Exhibit B attached hereto." Forest Preserve District of Du Page County, Ordinance No. 98—322 (eff. August 4, 1998). Exhibit A was the same metes and bounds legal description that the plaintiff provided in its original complaint and exhibit B was the same plat map as provided in the original complaint. However, also appended to the amended complaint was an exhibit C. Exhibit C was a revised metes and bounds legal description which purportedly was consistent with the plat map and depicted the entire 35-acre parcel. The trial court accepted the amended complaint. The trial court ruled, however, that August 5, 1998, would remain the valuation date.

On December 9, 1998, the defendant filed his *pro se* appearance. On January 5, 1999, the plaintiff moved for a default judgment alleging that the defendant had failed to answer or otherwise plead to the amended complaint. The trial court subsequently ordered the defendant to file a traverse or counterclaim, should he so desire, by February 15, 1999. On February 16, 1999, the plaintiff filed a handwritten document. This document provided in full:

> "I Jack Miller am filing [*sic*] this traverse/counterclaim formally objecting to the condemnation of my property at 7 N 601 Rodenburg Road Roselle Illinois by the Du Page County Forest Preserve."

The document was not accompanied by any notice of filing.

On March 24, 2000, the plaintiff filed a motion requesting the trial court to enter an order finding that the defendant had waived his ability to file a traverse due to his failure to timely file one. On May 30, 2000, the defendant filed a handwritten response to the plaintiff's motion. The defendant's response provided in relevant part:

> "We just recently discovered, by reading the plaintiff's most recent filing that we still had not filed our traverse. We apologize to the court and to the plaintiff for any hardship this may have caused. *** We respectfully ask to the court to accept our traverse, at this time, on this date May 30th, 2000.

### TRAVERSE

> I Jack Miller on this date May 30, 2000, formally object to the condemnation of my property at 7 N 601 Rodenburg Road by the Du Page County Forest Preserve."

On May 31, 2000, the trial court conducted a hearing. Following the hearing, the trial court found that the defendant had filed a general

traverse, which challenged the condemnation action on two grounds: (1) a lack of good-faith negotiations and (2) the constitutionality of the enabling ordinance. However, the trial court denied the defendant's traverse on both grounds and set the matter for a March 19, 2001, trial on the underlying condemnation action.

The defendant failed to appear on March 19, 2001. However, the trial proceeded as scheduled. The plaintiff called David Philips as its sole witness. Philips testified that he was a licensed appraiser. Philips performed an appraisal on the Rodenburg Marsh property. The Rodenburg Marsh property consisted of 35.5899 acres zoned for office research. The property had a wetlands area of 21.8338 acres and only 7 of the acres were buildable. The land was vacant, except for a single-family home on the southwest corner. The highest and best use for the buildable portion of the property would be single-family or multi-family residential units. In his opinion, the Rodenburg Marsh property was worth $700,000. After the plaintiff rested its case, the trial court ordered the appointment of a court expert, ordered that the expert be paid for by the plaintiff, and continued the matter.

On May 15, 2001, the trial court vacated its order appointing a court expert. It entered judgment for the plaintiff, setting just compensation for the Rodenburg Marsh property at $700,000. On June 11, 2001, the defendant, now represented by counsel, filed a posttrial motion. In that motion, the defendant argued, among other things, that (1) the plaintiff lacked the authority to acquire the Rodenburg Marsh property because the ordinance adopted by the district did not accurately describe the Rodenburg Marsh; and (2) the valuation date used at trial was incorrect.

On June 19, 2001, the plaintiff filed a motion to strike that portion of the defendant's posttrial motion challenging its enabling ordinance. In its motion to strike, the plaintiff argued that the defendant had waived this argument by not raising it earlier. Also on July 19, 2001, the plaintiff filed a response to the defendant's posttrial motion. In its response, the plaintiff argued that it was now authorized to condemn the Rodenburg Marsh property due to a recent ordinance that it had adopted on June 19, 2001. The plaintiff attached Ordinance No. 01—301 to its complaint. Ordinance No. 01—301 provided:

> "[T]he legal description set forth in Exhibit C to the October 1, 1998 Amended Complaint is hereby ratified and reaffirmed as being the legal description that described the Rodenburg Marsh Parcel sought to be acquired from the inception by the District." Forest Preserve District of Du Page County, Ordinance No. 01—301 (eff. June 19, 2001).

On September 25, 2000, following a hearing, the trial court found

that the valuation date used at trial was incorrect. It vacated its order of judgment for the plaintiff setting just compensation at $700,000. However, the trial court ruled that the incorrect valuation date in itself was not grounds to dismiss the condemnation suit. The trial court continued the matter for further hearings on the issue regarding the enabling ordinance.

On February 5, 2002, following a hearing, the trial court found that the ordinance did not authorize the condemnation of the entire 35-acre parcel. Specifically, the trial court ruled:

> "The law is clear that the property to be condemned must be reasonably described in the enabling action of the condemnor, be it in an ordinance or resolution. ***
>
> * * *
>
> In our case there was no enabling ordinance as to the property legally described in the amended complaint, and there is no showing of the Forest Preserve's right to condemn that parcel of property. ***
>
> * * *
>
> I think that the Forest Preserve *** filed an amended complaint to condemn a parcel of property which was different from and in excess of the parcel which the Forest Preserve passed an ordinance to condemn."

On April 10, 2002, the trial court entered an order dismissing the plaintiff's condemnation complaint. The plaintiff thereafter filed a timely notice of appeal. The defendant subsequently filed a timely notice of cross-appeal.

■ At the outset of the appeal, we note that the plaintiff has filed a motion requesting that we strike certain statements contained in the defendant's cross-reply brief for being inaccurate and unsupported by the record. See 177 Ill. 2d Rs. 341(e)(6), (e)(7). Supreme Court Rule 341(e)(6) requires that the facts of the case should be stated accurately and fairly. 177 Ill. 2d R. 341(e)(6). Supreme Court Rule 341(e)(7) requires that arguments should be supported by authority and appropriate references to the record. 177 Ill. 2d R. 341(e)(7). After reviewing the defendant's cross-reply brief, we believe that it substantially complies with Rules 341(e)(6) and 341(e)(7). Although we decline to strike any portion of the brief, we will nonetheless disregard any inaccurate statements. See *Brazas v. Ramsey*, 291 Ill. App. 3d 104, 108 (1997).

That said, the plaintiff's main contention on appeal is that the trial court erred in dismissing its condemnation action. More specifically, the plaintiff argues that (1) the defendant waived his right to challenge its authority to condemn the Rodenburg Marsh property for

not timely raising the issue in the trial court; (2) the trial court erred in construing the defendant's *pro se* document filed February 16, 1999, as a general traverse; (3) the trial court erred in shifting the burden to it to prove that its attorneys had been given the authority to file the amended complaint; (4) the trial court erred in finding that its enabling ordinance did not adequately describe the Rodenburg Marsh; and (5) the trial court erred in finding that the ordinance it passed during posttrial proceedings did not adequately describe the Rodenburg Marsh. Our standard for reviewing a trial court's dismissal of a condemnation petition is whether the order is against the manifest weight of the evidence presented. *Village of Round Lake v. Amann*, 311 Ill. App. 3d 705, 712 (2000).

Turning to the first of the plaintiff's specific contentions regarding the propriety of the trial court's dismissal, the plaintiff argues that a property owner must challenge a condemning entity's authority to condemn prior to proceeding to trial on the merits of a condemnation action, lest the issue be waived. *Chicago Housing Authority v. Berkson*, 415 Ill. 159, 161-62 (1953); *Lieberman v. Chicago & South Side Rapid Transit R.R. Co.*, 141 Ill. 140, 145 (1892). The plaintiff argues that the defendant failed to voice his challenge prior to proceeding to trial.

■ It is well settled that a traverse is a proper method by which to object to a condemning entity's authority to condemn. See *City of Evanston v. Piotrowicz*, 20 Ill. 2d 512, 517 (1960); *Village of Skokie v. Gianoulis*, 260 Ill. App. 3d 287, 297 (1994). Additionally, it is also well settled that a property owner may elect to challenge a condemnation proceeding with a general traverse. See *Forest Preserve District of Cook County v. Kean*, 298 Ill. 37, 45 (1921); *People ex rel. Samuel v. Cooper*, 139 Ill. 461, 473 (1891). A traverse, by definition, is a denial of a material allegation of fact. Black's Law Dictionary 1500 (6th ed. 1990). A general traverse is a blanket denial of all the factual allegations contained in a complaint. Black's Law Dictionary 1500 (6th ed. 1990).

■ When a complaint to condemn is traversed, the trial court may determine all questions raised regarding the condemnor's right to condemn the property. *Towne v. Town of Libertyville*, 190 Ill. App. 3d 563, 567 (1989). Notably, the burden of proof shifts to the condemnor to prove the disputed allegations when a condemnation action is traversed. *Village of Cary v. Trout Valley Ass'n*, 282 Ill. App. 3d 165, 169 (1996). If the condemnor fails to sustain its burden, the condemnation action is properly dismissed. *Department of Transportation ex rel. People v. 151 Interstate Road Corp.*, 333 Ill. App. 3d 821, 833 (2002).

■ In the instant case, we do not believe that the defendant waived

his right to challenge the authority of the plaintiff to condemn the Rodenburg Marsh property. Rather, we believe that the defendant timely presented a challenge to the plaintiff's authority to condemn the Rodenburg Marsh property by the filing of a traverse. The defendant filed his traverse on February 16, 1999. The defendant's traverse was filed one day after the court-imposed deadline, unaccompanied by any notice of filing. However, on May 31, 2000, following a hearing, the trial court in its discretion accepted the document. The trial court construed the defendant's traverse to be in the nature of a general traverse or a traverse that denied all the material allegations contained in the plaintiff's condemnation complaint. This traverse was sufficient to preserve the defendant's challenge to the plaintiff's authority to condemn.

The plaintiff's reliance on *Lieberman* and *Berkson* in asserting its contention of waiver is misplaced. Those cases involve instances where the defendants failed to file a traverse or voice any kind of objection prior to trial. See *Berkson*, 415 Ill. at 161-62, *Lieberman*, 141 Ill. at 145. The case at bar is inapposite to those the plaintiff cites, as the defendant here filed a traverse. The instant case is more analogous to *Village of Skokie v. Gianoulis*, 260 Ill. App. 3d 287 (1994).

In *Gianoulis*, the defendants moved for and the trial court granted a directed finding that the condemning entity was not authorized to acquire the subject property because the entity had failed to establish necessity with respect to a portion of the property. *Gianoulis*, 260 Ill. App. 3d at 297. The trial court subsequently dismissed the condemnation action. *Gianoulis*, 260 Ill. App. 3d at 297. On appeal, the condemning entity argued that the defendants had waived the issue of necessity because the defendants had failed to raise that specific contention prior to proceeding to trial. *Gianoulis*, 260 Ill. App. 3d at 297. The *Gianoulis* court noted that, although the defendants had not articulated that specific contention prior to trial, they had filed a traverse. *Gianoulis*, 260 Ill. App. 3d at 297. The *Gianoulis* court, relying on the well-settled proposition that a defendant may challenge a condemning entity's authority to condemn with a traverse, then held that the defendants had raised their specific contention regarding necessity through the filing of their traverse. *Gianoulis*, 260 Ill. App. 3d at 297. The *Gianoulis* court found, therefore, that there had been no waiver. We find the reasoning in *Gianoulis* persuasive and, here too, find that there was no waiver.

■ In so ruling, we reject the plaintiff's next contention that the trial court erred in construing the defendant's *pro se* document filed February 16, 1999, as a general traverse. The plaintiff argues that the defendant's document cannot be considered a traverse because it was

not plain and concise as required by section 2—603 of the Code of Civil Procedure (the Code) (735 ILCS 5/2—603(a) (West 1998)). The plaintiff further argues that the defendant's traverse did not comply with sections 2—610 and 2—612 of the Code (735 ILCS 5/2—610, 2—612 (West 1998)).

Section 2—603 requires that "[a]ll pleadings shall contain a plain and concise statement of the pleader's cause of action, counterclaim, defense, or reply." 735 ILCS 5/2—603(a) (West 1998). In addition to requiring pleadings to be concise, section 2—603 of the Code also provides that pleadings should be liberally construed with a view to doing substantial justice between the parties. 735 ILCS 5/2—603(c) (West 1998). Although the defendant's *pro se* traverse was a bit simplistic, we believe that it was very clear, concise, and to the point in stating that he was objecting to the condemnation of his property. Moreover, taking a liberal construction of the defendant's traverse, we cannot say that it violated section 2—603 of the Code.

Additionally, we find that the defendant's traverse did not violate section 2—610 of the Code. The traverse is a common law instrument that has been around since long before the adoption of the Code; not every section of the Code is applicable to a traverse. Section 2—610 is one of those sections that is inapplicable. Section 2—610 of the Code requires that "every answer or subsequent pleading shall contain an explicit denial of each allegation of the pleading to which it relates." 735 ILCS 5/2—610 (West 1998). It is apparent that section 2—610 governs answers to complaints and other subsequent pleadings such as replies. A traverse is not an answer, reply, or any other such pleading within the meaning of section 2—610. In fact, in an eminent domain proceeding a defendant need not even file an answer. See *151 Interstate Road Corp.*, 333 Ill. App. 3d at 839; *Towne*, 190 Ill. App. 3d at 567. Instead, the defendant need only file a traverse, which the defendant herein did. See *151 Interstate Road Corp.*, 333 Ill. App. 3d at 839; *Towne*, 190 Ill. App. 3d at 567.

Finally, we find that the defendant's traverse complied with section 2—612 of the Code, which provides that "[n]o pleading is bad in substance which contains such information so as reasonably informs the opposite party of the nature of the claim or defense which he or she is called upon to meet." 735 ILCS 5/2—612 (West 1998). The defendant's traverse, even though just one sentence, was sufficient to put the plaintiff on notice that the defendant was challenging its authority to condemn the Rodenburg Marsh property.

We note that no Illinois courts have specifically addressed what constitutes a sufficient traverse. However, the requirements of pleading a traverse appear to be quite minimal. See *City of Chicago v. Riley,*

16 Ill. 2d 257, 259-61 (1959). In *Riley*, the defendant had filed a verified petition praying for dismissal of the condemnation suit against her. *Riley*, 16 Ill. 2d at 259-60. Apparently, nowhere in the petition did it state that it was a traverse. *Riley*, 16 Ill. 2d at 259-60. However, on appeal, the supreme court treated the defendant's verified petition to dismiss the condemnation action as a traverse. *Riley*, 16 Ill. 2d at 261.

Additionally, turning back to *Gianoulis*, we note that the defendant's traverse in that case did not specify the exact grounds upon which the condemning entity's authority was being challenged. See *Gianoulis*, 260 Ill. App. 3d at 297. Nevertheless, the *Gianoulis* court did not question the sufficiency of the defendant's traverse. See *Gianoulis*, 260 Ill. App. 3d at 297. Accordingly, in line with these cases, we find that the defendant's traverse was sufficient in substance and that the trial court construed the document properly.

We next consider the plaintiff's contentions that the trial court erred in finding that its enabling ordinance and ordinance passed during posttrial proceedings did not adequately describe the Rodenburg Marsh property. The plaintiff concedes that there were discrepancies in its original complaint regarding the description of the property to be condemned. However, the plaintiff argues that its amended complaint and accompanying enabling Ordinance No. 98—322 correctly described the property. Alternatively, the plaintiff argues that the ordinance that it passed during posttrial proceedings, Ordinance No. 01—301, corrected any discrepancies in the description contained in Ordinance No. 98—322.

■ As a sovereign, the State has the inherent power to condemn property for public use. Other corporations or departments of the government, as distinguished from the State or sovereignty, can exercise the power of eminent domain only when such grant is specifically conferred by legislative enactment, and then only in the manner and by the agency so authorized. *Department of Public Works & Buildings v. Ryan*, 357 Ill. 150, 154 (1934); *MCI WorldCom Communications, Inc. v. METRA Commuter R. Division of the Regional Transportation Authority*, 337 Ill. App. 3d 576, 580 (2003). Section 6 of the Downstate Forest Preserve District Act (70 ILCS 805/6 (West 1998)) grants forest preserve districts, like the plaintiff herein, the power to acquire land by purchase or condemnation. 70 ILCS 805/6 (West 1998).

■ However, even when conferred the power to condemn, a public body such as the plaintiff may not exercise its eminent domain power unless it has manifested its determination to exercise that power by some official action of record. *City of Kankakee v. Dunn*, 337 Ill. 391, 394 (1929). A condemning entity generally manifests its determination

to exercise its power in an enabling ordinance or resolution. The supreme court has referred to the enabling ordinance as the foundation of an eminent domain action. See *Village of De Pue v. Banschbach*, 273 Ill. 574, 581 (1916). The enabling ordinance must reasonably describe the property to be taken; the failure of the plaintiff to adequately describe the property is fatal to the petition to condemn. *Kankakee*, 337 Ill. at 394; *Amann*, 311 Ill. App. 3d at 713.

■ The appropriation of private property against an owner's will is harsh and against the common right. *Chicago & Northwestern Ry. Co. v. Chicago Mechanics' Institute*, 239 Ill. 197, 200 (1909). Being in derogation of the common law, conferring statutes and enabling ordinances must be strictly construed in order to protect the right of property owners. *Department of Transportation v. First Galesburg National Bank & Trust Co.*, 141 Ill. 2d 462, 468-69 (1990). In construing statutes and ordinances, the cardinal rule is to ascertain and give effect to the true intent and meaning of the legislature. *In re Application for Judgment & Sale of Delinquent Properties for the Tax Year 1989*, 167 Ill. 2d 161, 168 (1995).

■ The best evidence of legislative intent is the language employed in the statute itself, which must be given its plain and ordinary meaning. *People v. Lewis*, 158 Ill. 2d 386, 389 (1994). The statute should be construed as a whole, with each section read in conjunction with every other section. *Bonaguro v. County Officers Electoral Board*, 158 Ill. 2d 391, 397 (1994). When the statutory language is clear, courts should give effect to the statute as enacted without considering extrinsic aids for construction. *Bogseth v. Emanuel*, 166 Ill. 2d 507, 513 (1995).

■ In the present case, the plaintiff had been conferred the power to condemn property through the Downstate Forest Preserve District Act. However, the plaintiff did not properly manifest its determination to exercise this authority. The plain language of Ordinance No. 98—322 stated that "the Executive Director, his staff and the Forest Preserve District attorneys be, and hereby are, authorized to take the necessary steps, either by negotiation or condemnation, to acquire title to the real estate described in Exhibit A and depicted in Exhibit B attached hereto." Forest Preserve District of Du Page County, Ordinance No. 98—322 (eff. August 4, 1998). Exhibit A, the legal description, described one parcel of land, while exhibit B, the plat map, depicted a different, larger parcel of land.

We note that the plaintiff did attach an exhibit C to its amended complaint, which was a legal description that purportedly described a parcel of land consistent with the plat map. However, Ordinance No. 98—322 did not authorize the condemnation of land as depicted in exhibit C. Rather, Ordinance No. 98—322 authorized the condemna-

tion of property as described in exhibits A and B, exhibits A and B being two inconsistent descriptions of the property to be taken. We believe that the trial court's construction of the plaintiff's enabling ordinance was correct. The enabling ordinance gave two inconsistent descriptions, and, therefore, the ordinance failed to reasonably describe the property to be taken.

Furthermore, we do not believe that the plaintiff's subsequent passage of Ordinance No. 01—301 almost two years after the filing of the amended complaint cured the first ordinance's inconsistent descriptions of property. Two Illinois Supreme Court cases have previously addressed similar situations where an ordinance was passed subsequent to the filing of the condemnation action in an attempt to correct deficiencies in the enabling ordinance upon which the complaint was founded. See *Goldman V. Moore*, 35 Ill. 2d 450 (1966); *City of Rockford v. Rockford Life Insurance Co.*, 16 Ill. 2d 287 (1959). *City of Rockford* in particular suggests that stringent standards should be applied to the requirement of an enabling ordinance that describes the property to be condemned. See *City of Rockford*, 16 Ill. 2d at 288-89.

In *City of Rockford*, the condemning entity's enabling ordinance failed to describe the land to be condemned. *City of Rockford*, 16 Ill. 2d at 288-89. Some five months after the action was commenced, the condemning entity passed an ordinance describing the land to be taken. *City of Rockford*, 16 Ill. 2d at 288-89. On appeal, the supreme court reversed the trial court's judgment for the condemning entity, reasoning:

> "The record does not show that prior to the filing of the eminent domain petition the city council had determined, either by resolution or ordinance what land was to be taken. ***
>
> Because the record fails to show an exercise of the power of eminent domain by the corporate authority of the city, the petition should have been dismissed." *City of Rockford*, 16 Ill. 2d at 289-90.

The *Goldman* court took a similar approach. In *Goldman*, the condemning entity filed a petition to condemn before even passing an enabling ordinance. *Goldman*, 35 Ill. 2d at 451-52. The enabling ordinance was finally adopted nine months after the filing of the suit. *Goldman*, 35 Ill. 2d at 452. On appeal, the supreme court affirmed the trial court's dismissal of the action, stating that the new resolution was not an effective exercise of the power of eminent domain. *Goldman*, 35 Ill. 2d at 454. We follow the stringent standards of *Goldman* and *City of Chicago* and find here that the subsequent ordinance passed by the plaintiff did not cure the insufficiencies of the first ordinance upon which the complaint was founded.

 The plaintiff's last contention on appeal is that the trial court improperly shifted the burden to it by requiring it to prove that its enabling ordinances adequately described the property to be condemned. The plaintiff argues that the defendant's challenge to its enabling ordinance was in a sense an assertion that its attorneys acted "*ultra vires*," or without the plaintiff's authority, in filing the amended complaint. The plaintiff, relying on *City of Winchester v. Ring*, 312 Ill. 544 (1924), argues that absent proof to the contrary, the attorneys who represent the condemning entity are presumed to have the authority to file a condemnation action on the condemning entity's behalf. *Ring*, 312 Ill. at 555.

We believe that *Ring* is inapplicable to the present case. First, the defendant in *Ring* never filed a traverse. When the defendant in this case filed his traverse challenging the plaintiff's authority, the burden of proof was rightfully placed upon the plaintiff to prove the *prima facie* case of its condemnation action. See *Village of Cary*, 282 Ill. App. 3d at 169. The plaintiff failed to sustain this burden due to the inaccurate descriptions contained in its enabling ordinance.

Second, contrary to the plaintiff's contentions, it was never required to prove that its attorneys were authorized to file the amended complaint. The issue in this case did not concern the plaintiff's attorneys' authority. Rather, the issue was whether the plaintiff itself possessed the requisite authority to condemn and whether it manifested its intent to exercise this authority properly. The plaintiff has taken portions of the record on appeal out of context in asserting that the issue was otherwise. In particular, the plaintiff cites to a portion of the record in which the trial court stated:

> "[Y]ou have used the word ultra vires and I like that word. I think we are—in describing what the government corporation has done, the government authority has done, it's not beyond their power but it was not exercised in the appropriate manner."

Out of context, it is possible that the trial court's statement could be construed as finding that the attorneys acted without the authority of the plaintiff. However, following that statement, the trial court went on to rule:

> "However, I don't think any of the cases use that word. So I don't want to get stuck on using the word ultra vires ***.
>
> * * *
>
> Since it's the government acting, I have used and no one seems interested in the term due process. And I think the government must strictly comply, in this case, the Forest Preserve must strictly comply with the grant of authority given to them by the legislature. And in failing to do that, they have denied the property owner due process of law."

It is clear that, taking the trial court's statement in context, the trial court found that the plaintiff, not the attorneys, acted improperly. The challenge was, and has been all along, to the plaintiff's authority and its improper exercise of it. A traverse was the appropriate instrument for the defendant to voice this challenge. See *Piotrowicz*, 20 Ill. 2d at 517; *Gianoulis*, 260 Ill. App. 3d at 297.

On a final note, we point out that the plaintiff devotes the latter portion of its brief to urging this court to classify the filing of the amended complaint as a voidable or void act. "Void" is defined as "[n]ull; ineffectual; nugatory; having no legal force or binding effect; unable, in law, to support the purpose for which it was intended." Black's Law Dictionary 1573 (6th ed. 1990). "Voidable," however, is defined as "[t]hat which may be avoided, or declared void; not absolutely void, or void in itself. It imports a valid act which may be avoided rather than an invalid act which may be ratified." Black's Law Dictionary 1574 (6th ed. 1990). We do not believe that the plaintiff's filing of the amended complaint falls under the void or voidable category. Rather, the filing of the amended complaint appears to be a valid act. Nevertheless, be it a void, voidable, or even a valid act, the plaintiff's condemnation action was still properly dismissed because the enabling ordinance attached to the complaint failed to reasonably describe the property to be taken. See *Kankakee*, 337 Ill. at 394; *Amann*, 311 Ill. App. 3d at 713.

Based on our resolution of the plaintiff's appeal, the issues that the defendant raises in his cross-appeal are moot, and we decline to address them.

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

GROMETER and BYRNE, JJ., concur.